IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| SAMMY SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13cv61 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | By:   Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

**REPORT AND RECOMMENDATION**

Plaintiff Sammy Smith seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f. On appeal, Smith argues that the Administrative Law Judge ("ALJ") erred in determining his residual functional capacity ("RFC"). This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and this case is before the undersigned magistrate judge by referral under 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the administrative record, the parties' briefs, and the applicable law, I find that the ALJ's decision is supported by substantial evidence, and I recommend that the Commissioner's decision be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

1

2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to

2

Case 4:13-cv-00061-JLK-JCH   Document 16   Filed 10/14/14   Page 2 of 14   Pageid#: 483

his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Smith was born on November 8, 1968, Administrative Record ("R.") 200, and at the time of the ALJ's decision was considered a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He graduated high school and completed two years of college. R. 236. He worked as a millwright in construction from 1995 to 2010. R. 237.

Smith applied for SSI on June 6, 2012, R. 200–08, and for DIB on July 12, 2012, R. 209–10.[1] He alleged a disability onset date of December 17, 2011, because of colon cancer, hemochromotosis, hernia, and memory loss. R. 236.

The Commissioner rejected Smith's applications initially and on reconsideration. R. 18. On April 24, 2013, the ALJ held an administrative hearing at which Smith was represented by counsel. R. 34–51. In an opinion dated April 26, 2013, the ALJ found that Smith had colon disorder status post stage IIIB colon cancer, status post traumatic head injury, hemochromatosis, organic mental disorder, and affective disorder, which qualified as severe impairments. R. 20. None of the impairments met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21–22. The ALJ found that Smith had the RFC to perform light

---

[1] Smith previously applied for disability, and his application was denied on December 16, 2011, by an ALJ after an administrative hearing. R. 55–66. Smith did not appeal that decision.

3

work,[2] except that he can frequently climb ramps, stairs, ladders, ropes, and scaffolds; frequently climb and balance; and occasionally stoop, crouch, and crawl. R. 22. Additionally, he could perform only simple, unskilled tasks. *Id.* Relying on the testimony of a vocational expert, the ALJ determined that Smith could not perform his past work, but was capable of performing other work at the light level. R. 27–29. Accordingly, the ALJ determined that Smith was not disabled under the Act. R. 29. The Appeals Council denied Smith's request for review, R. 1–4, and this appeal followed.

## III. Discussion

*A.     Relevant Facts*

On May 29, 2012, Smith was seen by his oncologist. Smith reported that he remained fatigued and depressed and was not taking any medications. R. 346. His oncologist prescribed Prozac with an initial dosage of 20 mg, increasing to 40 mg. R. 348.

On August 16, 2012, Dr. Dana R. Blackmer, Ph.D, conducted a consultative mental status examination of Smith. R. 356–59. She noted that Smith had been diagnosed with depression, had undergone outpatient psychiatric care, and was taking Prozac. R. 356. Smith reported having low energy and social interest and variable sleep. *Id.* Smith stated that he completed two years of college and worked as a machine operator until he suffered injuries in a car accident in 1992 that impaired his cognitive skills and memory. R. 356, 358.

Dr. Blackmer found that Smith was oriented to person, place, time, and situation, his thought processes were logical, and his mood was flat and somewhat depressed. R. 357. She assessed his concentration, attention, and memory capabilities from his responses to a series of

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he or she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

questions. *Id.* Dr. Blackmer determined that Smith's concentration, attention, and long-term memory were fair and his short-term memory was fair to poor. *Id.* Smith had fair to good social common sense and judgment. *Id.* Based on Smith's reported educational, occupational, and social histories and his responses to a standardized intelligence test as well as Dr. Blackmer's evaluation of Smith's level of understanding, she estimated that he functioned in the high-borderline range of intelligence. R. 358.

Dr. Blackmer diagnosed cognitive disorder not otherwise specified and dysthemic disorder, moderate to severe psychosocial and environmental problems on Axis IV, and a Global Assessment of Functioning ("GAF")[3] score of 50.[4] R. 358. As the rationale for her diagnosis, Dr. Blackmer noted Smith's report of moderate depressive symptoms for a number of years and his report of diminished cognitive function and memory loss since the car accident in 1992. *Id.* She estimated that he would have no difficulty performing simple and repetitive tasks, accepting supervision and instruction, or dealing with co-workers and the public; mild to moderate difficulty with detailed and complex tasks for which he also would require additional or special supervision; moderate difficulty maintaining regular workplace attendance, completing a normal workday, and dealing with normal workplace stress; and moderate to severe difficulty working consistently over time. *Id.*

---

[3] GAF scores represent a "clinician's judgment of the individual's overall level of functioning." Am. Psychological Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) ("DSM-IV"). The scale is divided into 10 ten-point ranges reflecting different levels of functioning, with 1–10 being the lowest and 91–100 the highest. *Id.*

[4] A GAF score of 41–50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV* 34.

On November 28, 2012, Smith went to the Southside Community Services Board ("Southside CSB") for a mental health assessment conducted by Ruth Simon, M.S.W. R. 387. Smith reported having memory problems since sustaining injuries in a car accident in 1992 that left him in a coma for two weeks. *Id.* He began taking Prozac after his cancer surgery in 2009 to treat his anger issues. *Id.* Smith reported that he has a ten-year-old daughter to whom he is very devoted and that ongoing custody disputes with her mother were a significant source of stress for him. *Id.*

Assessing Smith's mental status, Ms. Simon found Smith was alert, appropriate, and cooperative and had poor insight, good judgment, poor fund of knowledge, good abstract thinking, and flattened affect. R. 389. She determined that he had a history of depressive episodes, anger management problems, and anxiety symptoms. *Id.* She recommended therapy and medication management. *Id.* Ms. Simon diagnosed major depressive disorder, recurrent, moderate and assigned Smith a GAF score of 58.[5] R. 390.

On December 12, 2012, Dr. Geeta Nathan, M.D., conducted a psychological evaluation of Smith. R. 405–07. Smith recounted his history and current situation. R. 405–06. Dr. Nathan found that Smith was pleasant, cooperative, alert, and oriented; had fair insight and judgment; and had a restricted affect. R. 406. Dr. Nathan confirmed the diagnosis of major depressive disorder, recurrent and assigned a GAF of 50. R. 407. Dr. Nathan determined that Prozac was helping Smith and increased the dosage by 20 mg to address his decreased motivation, low energy, and irritability. R. 407–08. Dr. Nathan encouraged Smith to increase his daily activities. R. 407.

---

[5] A GAF score of 51–60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV* 34.

6

At a psychiatric follow-up and medication management appointment in January 2013, Dr. Nathan noted similar findings. R. 408. Dr. Nathan discussed switching medications, but Smith wanted to continue taking Prozac. *Id.* He said his brother noticed an increase in agitation and anger when Smith stopped taking Prozac. *Id.* Dr. Nathan noted that Smith would experience the full effects of the increased dosage of Prozac in four more weeks. *Id.* During a follow-up visit in February 2013, Smith reported that he was doing "pretty good" on Prozac. R. 412. He also reported sleeping for all but 10 hours of the previous day and getting sidetracked and overwhelmed. *Id.* Dr. Nathan suggested changing medications, but Smith still wanted to take Prozac because it was helping him. *Id.* Dr. Nathan showed Smith breathing techniques to help him relax and again encouraged increased activity. *Id.*

State agency psychologists Dr. Richard Luck, Ph.D., and Dr. Alan Entin, Ph.D., reviewed Smith's medical records and other documents relating to his disability claim. R. 73–84, 99–111. They reached similar conclusions about Smith's mental impairments and the restrictions they caused, but their assessments of Dr. Blackmer's opinion differed. Dr. Luck found Dr. Blackmer's opinion to be "an overestimate of the severity of [Smith's] restrictions/limitations and based only on a snapshot of [his] functioning," R. 82; whereas, Dr. Entin found that Dr. Blackmer's opinion was consistent with his own assessment of the records, R. 107. Ultimately, Dr. Luck and Dr. Entin determined that Smith had an organic mental disorder and affective disorder. R. 78, 105. They agreed that Smith was moderately limited in the following functional areas: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary limits; completing a normal workday and workweek without

7

interruptions from psychologically caused symptoms; and performing at a consistent pace. R. 80–81, 107–08.

Smith submitted a functional report to the state agency in June 2012. He indicated that he cleans his residence, prepares simple meals, does yard work, drives, shops for groceries, manages his finances, and spends time with his ten-year-old daughter. R. 250–52. He has no problems with self-care. R. 250. Smith sleeps at irregular times and is "always sleepy," he gets angry easily and prefers to spend time alone, and he has memory and concentration problems. R. 250, 254–55.

At the administrative hearing, Smith testified consistently with his prior statements. He also said that he was most active when his daughter stayed with him, and he explained that he tried "to do the best [he] can for her." R. 42–43.

A vocational expert ("VE") also testified at the hearing. In questioning the VE, the ALJ presented two hypotheticals. As to the first, the ALJ stated that the person could perform light work, frequently climb ramps, stairs, ladders, ropes, or scaffolds and occasionally stoop, crouch, and crawl. R. 47. Concerning mental limitations, the person could perform simple, unskilled work. R. 47–48. The VE responded that jobs existed that this person could perform, including cashier and packer. R. 48. As to the second hypothetical, the ALJ provided the same limitations, but added that the person would have mild to moderate difficulty with detailed and complex tasks and would require special supervision for such tasks. *Id.* Additionally, the person would have moderate difficulty maintaining attendance, completing a normal workday, and dealing with usual stresses in the workplace and moderate to severe difficulty working consistently over time. R. 48–49. The VE responded that a person with these limitations could perform the same

8

jobs he previously identified, except that the single "severe" restriction would preclude this individual from performing any competitive work. R. 49.

  B. *The ALJ's Decision*

In his written opinion, the ALJ reviewed the medical records regarding Smith's mental impairment from Dr. Blackmer and Southside CSB. R. 23–25. He gave Dr. Blackmer's opinion partial weight, crediting her assessment of moderate symptoms and limitations, but dismissing her assessment of a severe limitation, including a GAF score of 50, as inconsistent with her findings and the rest of the record. R. 26–27. The ALJ found that Smith had been treated with counseling and medication, a course of treatment that he deemed conservative. R. 25. He also found that Prozac had been "relatively effective in controlling" Smith's symptoms. *Id.* The ALJ noted that Smith's daily activities were inconsistent with his claims of disabling mental impairment. *Id.*

The ALJ gave great weight to the state agency psychologists' assessments of Smith's mental capabilities, finding that those assessments were consistent with the record. R. 26.

As to Smith's mental RFC, the ALJ determined that Smith could perform simple, unskilled work "on a sustained basis in a competitive work environment." R. 22.

  C. *Analysis*

Smith's overarching argument is that the ALJ erred in determining his mental RFC. Smith first argues that the ALJ erroneously gave only partial weight to the opinion of a consulting examining psychiatrist, Dr. Blackmer. Pl. Br. 12–14, ECF No. 13.

An ALJ must consider and evaluate all opinions from "medically acceptable sources," such as doctors, in the case record. 20 C.F.R. §§ 404.1527, 416.927. In determining what weight to afford a doctor's opinion, the ALJ must consider all relevant factors, including whether the

9

doctor examined the claimant, the relationship between the doctor and the claimant, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

The ALJ reviewed Dr. Blackmer's psychological evaluation of Smith and her assessment of his limitations. The ALJ gave her opinion partial weight because one finding, that Smith would have "moderate to severe" difficulty working consistently over time, was inconsistent with her own findings and those from other sources in the record of moderate symptoms and limitations. R. 26–27. The ALJ's rationale rested on several grounds.

The ALJ reviewed Smith's report of daily activities and determined that they did not corroborate his claims of disabling symptoms and limitations. R. 25. Smith cleaned his house, did yard work, managed his finances, prepared simple meals, drove, shopped for groceries, and had partial custody of his ten-year-old daughter. Although Smith's activities are restricted, they are consistent with the moderate limitations depicted throughout the record.

The ALJ deemed Smith's regimen of medication management and monthly counseling sessions conservative. R. 25. "[W]hen considered with other information, the routine nature of a course of treatment may indicate that a condition is not as severe as a plaintiff's subjective complaints may otherwise indicate." *Viverette v. Astrue*, No. 5:07cv395-FL, 2008 WL 5087419, at *2 (E.D.N.C. Nov. 24, 2008). Smith began taking Prozac in May 2012. Although Dr. Nathan suggested trying other medications, Smith declined in favor of continuing with Prozac at an increased dosage because he thought it was helping.[6] In addition to prescribing medication, Dr.

---

[6] One month after Dr. Nathan had assigned Smith a GAF score of 50 and increased his Prozac dosage, the doctor noted that Smith had not yet experienced the full effect of the increased dosage. Dr. Nathan did not make any other GAF assessments.

10

Nathan counseled Smith on a monthly basis, encouraged him to be more active, and showed him breathing techniques for relaxation. In some cases counseling and medication management may be aggressive treatment for mental impairments, but in this case, the ALJ's determination that Smith's treatment was conservative is reasonable.

The most persuasive reason the ALJ cited for partially discounting Dr. Blackmer's opinion is the ample evidence that Smith's mental impairment and resulting limitations were moderate. As discussed in detail above, the evaluations and findings of all of the medical providers showed that Smith has a mental impairment that caused significant, but moderate limitations. The assessments of the state agency psychologists, Drs. Luck and Entin, were largely consistent with that of Dr. Blackmer, and they are consistent with the bulk of the record, which shows moderate impairment. Accordingly, the ALJ could rely on the opinions of the state agency physicians and their assessments of his mental functional limitations. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

The ALJ's mental RFC, however, is inconsistent with his determination to credit the opinions of the state agency physicians and Dr. Blackmer that Smith had moderate mental limitations. The only mental restriction the ALJ accounted for in Smith's RFC was limiting him to simple, unskilled work.

Unskilled work "is a term of art, defined by regulation as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Fisher v. Barnhart*, 181 F. App'x 359, 364 n.3 (4th Cir. 2006) (quoting 20 C.F.R. § 404.1568(a)). "[C]ompetitive, remunerative, unskilled work" demands the ability, on a sustained basis, "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Soc.

11

Sec. R. 85–15, 1985 WL 56857, at *4 (Jan. 1, 1985). "A limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task or maintaining the pace required to complete a task. *Sexton v. Colvin*, --- F. Supp. 2d ---, 2014 WL 2090647, at *4 (W.D. Va. May 19, 2014) (citing *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005)) (other citations omitted).

In formulating Smith's RFC, the ALJ did not account for a moderate limitation in concentration, persistence, and pace. Furthermore, the restriction to simple, unskilled work does not address Smith's moderate limitation in the ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary limits. The ALJ did not explain why his assessment of Smith's RFC omitted these limitations identified by Drs. Luck, Entin, and Blackmer.

The Commissioner cites *Thompson v. Astrue*, 442 F. App'x 804 (4th Cir. 2011) (per curiam), as circuit authority rejecting the proposition that a restriction to simple, unskilled work does not address significant limitations in concentration, persistence, and pace. Def. Br. 9, n.6, ECF No. 15. *Thompson*, however, is not so broad. In *Thompson*, the ALJ found at step two that the claimant had mental limitations establishing a severe impairment, but he determined at step four that her mental RFC was not restricted. *Thompson*, 442 F. App'x at 806 n.2 (distinguishing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), and *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)). Accordingly, the Fourth Circuit found that the ALJ's hypothetical that reflected the claimant's RFC as determined at step four, but not limitations identified at step two, was proper. *Id.* at 806.

Here, at step four of the analysis, the ALJ credited the opinions of Drs. Luck and Entin as well as Dr. Blackmer's opinion in so far as she found "moderate" limitations. The ALJ, however,

omitted from Smith's RFC a moderate limitation in concentration, persistence, and pace that each of these medical providers identified. No medical opinion or other evidence in the record supported this omission. Accordingly, the ALJ's assessment of Smith's mental RFC is not supported by substantial evidence.

Even so, this error does not require remand. The ALJ presented a hypothetical to the VE that incorporated the moderate mental limitations identified by Drs. Luck, Entin, and Blackmer as well as the severe limitation in working consistently over time identified by Dr. Blackmer. *See* R. 48–49. Thus, the hypothetical properly took into account all of Smith's abilities and limitations as established in the record. *See Walker v Bowen*, 889 F.2d 47, 50–51 (4th Cir. 1989). The VE testified that a person who had the moderate limitations identified in this hypothetical, essentially those found by the state agency psychologists, could perform specific jobs existing in the national economy. The ALJ credited the assessments of Drs. Luck and Entin, R. 26 (finding that the state agency psychologists' "opinions are balanced, objective, and consistent with the evidence of record as a whole, with respect to the claimant's mental abilities"), and his determination to partially discount the opinion of Dr. Blackmer, essentially where it differed from that of the state agency psychologists, was proper.

While I am cognizant of the limitations of this Court in reviewing the Commissioner's decision, I find that remand for the ALJ to formulate a proper mental RFC is unnecessary. The ALJ properly credited the opinions of the state agency psychiatrists and presented an accurate hypothetical to the VE. The ALJ's error in assessing Smith's mental RFC at step four was thus harmless, *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009) (defining the harmless-error standard in social security disability cases), and his determination at step five that Smith could perform other work, as stated by the VE, is supported by substantial evidence.

IV. Conclusion

For the foregoing reasons, I respectfully recommend that the Commissioner's motion for summary judgment, ECF No. 14, be granted, Smith's motion for summary judgment, ECF No. 12, be denied, and the Commissioner's final decision be affirmed.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: October 14, 2014

Joel C. Hoppe
United States Magistrate Judge